UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| MINDY HAHN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:21-CV-17-SPM |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social Security,[1] | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security (the "Commissioner") denying the application of Plaintiff Mindy Hahn ("Plaintiff") for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* (the "Act").[2] The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 7). Because I find the decision denying benefits was not supported by substantial evidence, I will reverse the Commissioner's denial of Plaintiff's application and remand the case for further proceedings.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted, therefore, as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] As discussed below, plaintiff originally also applied for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.* However, Plaintiff subsequently amended her alleged onset date and waived her request for a hearing on the Title II claim. (Tr. 145, 265, 443, 452).

**I.      FACTUAL BACKGROUND**

At the hearing before the ALJ on November 19, 2019, Plaintiff testified that her anxiety causes her to live in isolation, have no friends, and not see her family; that she has been losing weight and has no appetite; that she deals with diarrhea or constipation daily, which her doctor says is due to stress and nerves; that she has panic attacks, extreme anxiety, and flashbacks; that she either sleeps too much or has insomnia; and that she has migraines 15 days a month, during which she lies down, ices her head, and keeps the house dark and silent. (Tr. 268-75). The medical records show that before and during the relevant period, Plaintiff has frequently sought treatment for conditions including anxiety, depression, panic disorder, unintended weight loss, gastrointestinal issues, insomnia, and migraine headaches, and has received therapy and numerous medications for those conditions. The record also contains opinion evidence from several sources: treating physician Dr. Patrick O'Hara opined in October 2019 that Plaintiff's frequent migraine headaches would cause her to miss work more than four times a month and that she could not tolerate even "low stress" jobs (Tr. 626-29); treating psychiatrist Dr. Jay Liss and treating licensed clinical social worker Nicola Wissler both opined in mid-2019 that Plaintiff has marked limitations in nearly all areas of mental functioning (Tr. 611-23); state agency consultant Donna McCall, D.O., opined in September 2018 that Plaintiff could lift up to 10 pounds frequently and could stand and/or walk for about six hours in an eight-hour work day, with some additional postural and environmental limitations (Tr. 330-31); and state agency consultant Steven Akeson, Psy.D. opined in September 2018 that Plaintiff could sustain simple, work-related tasks and had a reduced ability to deal with coworkers and the public but could handle brief and superficial contact (Tr. 328-29, 334).

The Court accepts the facts as set forth in the parties' respective statements of fact. The Court will cite to specific portions of the transcript as needed to address the parties' arguments.

## II. PROCEDURAL BACKGROUND

On August 3, 2018, and August 24, 2018, respectively, Plaintiff applied for Disability Insurance Benefits ("DIB") under Title II of the Act and for SSI under Title XVI of the Act alleging that she had been unable to work since June 6, 2018. (Tr. 422-36). Plaintiff alleged that her inability to work was due to anxiety, post-traumatic stress disorder, severe panic disorder, depression, agoraphobia, migraines, and vomiting/diarrhea/bleeding. (Tr. 460). Her applications were initially denied. (Tr. 347-56). On November 2, 2018, Plaintiff filed a Request for Hearing by Administrative Law Judge (ALJ) (Tr. 361). On October 7, 2019, Plaintiff amended her alleged onset date to July 21, 2018 (a date after her date last insured) and thereby waived her claim for Disability Insurance Benefits under Title II. (Tr. 145, 265, 443, 452). On November 19, 2019, the ALJ held a hearing on Plaintiff's claim. (Tr. 260-81). On February 13, 2020, the ALJ issued an unfavorable decision. (Tr. 142-61). On March 3, 2020, Plaintiff filed a Request for Review of Hearing Decision with the Social Security Administration's Appeals Council. (Tr. 417-19). On December 16, 2020, the Appeals Council denied the request for review. (Tr. 1-5). Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

## III. STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Hum. Servs.,* 955 F.2d 552, 555 (8th Cir. 1992). Under Act, a person is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical

3

or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). *Accord Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for him [or her], or whether he [or she] would be hired if he [or she] applied for work." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. § 416.920(a); *see also, e.g., McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the [twelve-month duration requirement in § 416.909], or a combination of impairments that is severe and meets the duration requirement"; if the claimant does not have a severe impairment, the claimant is not disabled. 20 C.F.R. § 416.920(a)(ii); *McCoy*, 648 F.3d at 611. To be severe, an impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. § 416.920(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the

Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. § 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner assesses the claimant's residual functional capacity ("RFC"), 20 C.F.R. § 416.920(a)(4), which "the most [a claimant] can still do despite [his or her] limitations," 20 C.F.R. § 416.945(a)(1). *See also Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). At Step Four, the Commissioner determines whether the claimant can return to his or her past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his or her past relevant work, the claimant is not disabled; if the claimant cannot, the analysis proceeds to the next step. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 416.920(g), 416.1560(c)(2); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he or she is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.960(c)(2).

## II.   THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ here found that Plaintiff has not engaged in substantial gainful activity since July 21, 2018, the amended alleged onset date; that

Plaintiff had the severe impairments of migraines, attention deficit/hyperactivity disorder ("ADHD"), panic disorder with agoraphobia, bipolar disorder, post-traumatic stress disorder ("PTSD"), major depressive disorder, and social phobia; and that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 148-49). The ALJ found that Plaintiff had the following RFC:

> [Plaintiff] has the residual functional capacity to perform a range of light work as defined in 20 CFR 416.967(b). Specifically, the claimant is able to lift up to 20 pounds occasionally and lift/carry up to ten pounds frequently. She is able to stand/walk for about six hours and sit for up to six hours in an eight-hour workday, with normal breaks. She is unable to climb ladders/ropes/scaffolds, but is frequently able to climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. She is able to tolerate moderately noisy work environments. She should avoid all exposure to unprotected heights and use of dangerous moving machinery. She is able to perform simple, routine, and repetitive tasks in a work environment free of fast-paced production requirements, involving only simple work-related decisions and routine workplace changes. She is able to perform work that is isolated from the public, with only occasional supervision and only occasional interaction with coworkers.

(Tr. 150-51). At Step Four, the ALJ found Plaintiff was unable to perform any of her past relevant work. (Tr. 156). However, at Step Five, relying on the testimony of a vocational expert, the ALJ found that considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform, including representative occupations such as packer; mail clerk, not in post office; and sorter of garments or clothing. (Tr. 157-58). Accordingly, the ALJ found that Plaintiff had not been under a disability, as defined in Act, since July 21, 2018, the date the application was filed. (Tr. 158).

## IV.   STANDARD FOR JUDICIAL REVIEW

The decision of the Commissioner must be affirmed if it "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (quoting *Ford v. Astrue*, 58 F.3d 979, 981 (8th Cir. 2008)); *see also* 42 U.S.C. §§ 405(g); 1383(c)(3). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Pate-Fires*, 564 F.3d at 942 (quotation marks omitted). *See also Biestek*, 139 S. Ct. at 1154 ("Substantial evidence . . . means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Consol. Edison*, 305 U.S. at 229).

In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012). However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

V.   DISCUSSION

Plaintiff challenges the ALJ's decision on several grounds, arguing that the ALJ's RFC finding is not supported by substantial evidence, that the ALJ did not properly consider the opinion evidence in the record, and that the ALJ did not perform a proper evaluation of Plaintiff's subjective complaints of pain. Plaintiff's challenges relate both to the ALJ's assessment of her mental impairments and the ALJ's assessment of her migraine headaches.

After careful review of the record, the Court finds that remand is required because the ALJ's assessment of the opinion evidence and subjective complaints, as they relate to Plaintiff's migraine headaches and their effect on her RFC, is not supported by substantial evidence.

The Court first considers the ALJ's evaluation of the opinion evidence related to Plaintiff's migraine headaches. On October 4, 2019, Dr. Patrick O'Hara, offered the following opinion. Dr. O'Hara stated that Plaintiff had "migraines, sporadic that can occur every day for a week, normally relieved with medication, last most of the day average 8-12 hours." (Tr. 626). He noted that the headaches were "severe" and were associated with vertigo, nausea/vomiting, photosensitivity, visual disturbances, mood changes, and mental confusion/inability to concentrate. (Tr. 626). Objective signs of her headaches included weight loss, impaired sleep, and impaired appetite or gastritis. (Tr. 627). Dr. O'Hara stated that when the headaches occur, Plaintiff "will have to be in a dark room and keeps house dark to try to prevent recurrence." (Tr. 626). He noted that Plaintiff takes Topamax twice a day and also takes Sumatriptan as needed,[3] and he stated that the medications "will be effective for patient but may take several hours." (Tr. 628). He opined that when Plaintiff has a headache, she would generally be precluded from performing even basic work activities and would need a break from the workplace, and he wrote

---

[3] Treatment records suggest that Plaintiff takes Topamax twice daily to prevent migraines, and she takes Sumatriptan with the onset of the headache and again two hours later. (Tr. 630).

8

that "when migraine occurs [Plaintiff] would not be able to work for several hours or [would be] done working for the day." (Tr. 628). He opined that Plaintiff would be absent from work due to her impairments or treatment more than four times a month. (Tr. 629).

Under the rules applicable to Plaintiff's claim,[4] the ALJ must evaluate the persuasiveness of medical opinions in light of the following factors: (1) supportability (the degree to which the medical source presents objective medical evidence and supporting explanations to support his or her opinions); (2) consistency (how consistent the opinion is with evidence from other medical and nonmedical sources); (3) relationship with the claimant (including the length, purpose, nature, and extent of the relationship, and the frequency of examinations) (4) specialization; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies." § 416.920c(a)-(c). The first two factors—supportability and consistency—"are the most important factors" to consider when determining the persuasiveness of a medical source's medical opinions, and the ALJ must "explain how [he or she] considered the supportability and consistency factors" in the decision. § 416.920c(b)(2). The ALJ may, but is "not required to," explain how he or she considered the remaining factors. *Id.*

In evaluating Dr. O'Hara's opinion, the ALJ stated:

> The undersigned finds this opinion is not persuasive, as it is not supported by the evidence of record and is inconsistent with the treatment and stability of symptoms documented. The claimant's treatment for migraines has remained conservative in nature, consisting of medication management. Her migraines responded well to medication (Exhibit C4F). They were generally sporadic in

---

[4] As Plaintiff acknowledges, because Plaintiff's application for benefits was filed in August 2018, the ALJ was required to evaluate the medical opinions in this case pursuant to the new rules set forth at 20 C.F.R. § 4156.920c. Under these rules, the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from [Plaintiff's] medical sources." 20 C.FR. § 416.920c(a)

9

> nature (Exhibit C5F, pages 18, 90). Accordingly, the undersigned finds this opinion is not persuasive.

(Tr. 156). These statements indicate that the ALJ did consider the supportability and consistency factors, as required by the regulations. However, the evidence cited in support of the ALJ's analysis does not support the decision to discount Dr. O'Hara's opinion.

First, although it is appropriate to consider a conservative course of treatment in evaluating the severity of claimed symptoms, the Court finds no evidence in the record to suggest that more aggressive treatments would have been appropriate for the migraines described by Plaintiff and Dr. O'Hara. There is no opinion from a medical expert suggesting that Plaintiff's course of treatment—daily preventative medications combined with medications taken at the onset of symptoms—was inconsistent with her claim of frequent and severe migraines, that more aggressive treatments might have been available, or that Plaintiff declined more aggressive treatment options. On these facts, the conservative nature of the treatment provides very little reason to discount Dr. O'Hara's opinion.

Second, to support his finding that Dr. O'Hara's opinion was unpersuasive because Plaintiff "responded well to medication," the ALJ cites to Dr. O'Hara's opinion itself. In that opinion, Dr. O'Hara did state that Plaintiff's migraines were normally relieved with medication, but he also stated in the same opinion that the medication "may take several hours" to be effective, that the migraines would last 8 to 12 hours, that Plaintiff would have to be in a dark room and keep the house dark to prevent recurrence, and that when a migraine occurs Plaintiff would not be able to work for several hours. Dr. O'Hara's opinion appears to be that even *with* medication providing relief after several hours, Plaintiff's headaches would last several hours and would cause her to be unable to work. The ALJ does not cite any evidence to the contrary, either in Dr. O'Hara's treatment notes or elsewhere in the record, nor does the ALJ explain how

the RFC would be consistent with it taking several hours for Plaintiff's medications to work or with her needing to remain in a dark room to prevent recurrence. The Court also notes that after the ALJ's decision, Plaintiff saw a neurologist for her headaches who described Plaintiff's migraine headaches as "intractable," further undermining the suggestion that these headaches responded well to medication. (Tr. 6, 8).

Third, although the ALJ's statement that Plaintiff's migraines were "sporadic" in nature appears to be factually accurate, the sporadic nature of the headaches does not undermine Dr. O'Hara's opinion. Dr. O'Hara himself stated in the opinion at issue that Plaintiff's headaches were "sporadic," and then explained that they occur several times a month for 8 to 12 hours at a time and would cause her to miss work more than four times a month. The ALJ does not explain how sporadic headaches are inconsistent with this opinion, nor is it apparent to the Court. Dr. O'Hara's statement also generally appears to be consistent with his own treatment notes and other evidence in the record, which indicates that Plaintiff complained routinely of intermittent but frequent and long-lasting headaches. For example, in one treatment note (cited elsewhere in the ALJ's decision to support the ALJ's finding that Plaintiff's headaches were "sporadic"), Dr. O'Hara notes that Plaintiff has "frequent headaches but not every day" and that she "averages taking Sumatriptan 9 times a month." (Tr. 647).

For all of the above reasons, the Court finds that the ALJ's analysis of Dr. O'Hara's opinion was not supported by substantial evidence. Moreover, in light of the testimony of the vocational expert that employers would tolerate only one excused absence per month (Tr. 277), it appears that if the ALJ had given more weight to Dr. O'Hara's opinion that Plaintiff would be absent from work due to headaches more than four times a month, it would have precluded the

11

ALJ's finding that Plaintiff could perform work. The Court therefore finds that remand is required for re-evaluation of Dr. O'Hara's opinion.

The Court has also considered the ALJ's analysis of Plaintiff's subjective complaints of pain. In evaluating the intensity, persistence, and limiting effects of an individual's symptoms, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *4 (Oct. 25, 2017). In examining the record, the ALJ must consider several factors, including the claimant's daily activities; the duration, intensity, and frequency of the symptoms; precipitating and aggravating factors; the dosage, effectiveness, and side effects of medication; any functional restrictions; the claimant's work history; and the objective medical evidence. *See Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009) (citing *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008), & *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)). *See also* SSR 16-3p, 2017 WL 5180304, at *7-*8; 20 C.F.R. § 416.929(c)(3). Social Security Ruling 16-3p states that "[t]he determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2007 WL 5108034, at *10. However, "[t]he ALJ is not required to discuss each *Polaski* factor as long as 'he acknowledges and considers the factors before discounting a claimant's subjective complaints.'" *Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010) (quoting *Moore*, 572 F.3d at 524).

12

The ALJ's assessment of Plaintiff's subjective complaints of pain in this case suffers from some of the same deficiencies the Court discussed above with respect to the assessment of Dr. O'Hara's opinion. Again, the ALJ relied heavily on the sporadic nature of Plaintiff's headaches, but that was something acknowledged by Plaintiff and does not undermine her complaints that those sporadic headaches were severe enough to be debilitating. The ALJ also again relied on Dr. O'Hara's statement that the headaches were relieved with medication, but did not discuss Dr. O'Hara's suggestions in the same document that the medications would take hours to work and that Plaintiff's condition would prevent work while the headaches persisted.[5] The ALJ also considered that Plaintiff's "physical examinations remained normal." (Tr. 152). But as courts have frequently recognized, migraine headaches cannot be proven or disproven by physical examinations or objective symptoms. *See Vancil v. Saul*, No. 4:18-CV-55 NAB, 2019 WL 4750443, at *2 (E.D. Mo. Sept. 30, 2019) ("Because migraines constitute a subjective complaint, objective evidence conclusively showing whether a person suffers from them is impossible to find.") (quoting *Carrier v. Berryhill*, CIV-1-5086-JLV, 2017 WL 885019 at *5 (D.S.D. Mar. 6, 2017)); *Williams v. Kijakazi*, No. 4:20 CV 1493 DDN, 2022 WL 823062, at *11 (E.D. Mo. Mar. 18, 2022) (finding that it was error for an ALJ to discount claims of migraine headaches based on a normal MRI; noting that "[n]either the occurrence nor the severity of migraine headaches is specifically detectable through such testing" and that "the Court is not aware of a requirement that the severity of migraines be proven through objective clinical findings."). Thus, physically normal examinations provide little to no support for discounting subjective complaints of migraine headaches. Finally, the Court notes that the ALJ did not

---

[5] The ALJ also noted that before Plaintiff's alleged onset date, "medication adjustments caused improvements." (Tr. 152). But the record ALJ cites for that conclusion suggests only a temporary and possible improvement: it states, "Topamax was increased last visit for [Plaintiff's] headaches, thought was helping but then had gotten a bad spell." (Tr. 577).

13

discuss how her evaluation of Plaintiff's subjective complaints was affected by several other relevant factors, including Plaintiff's daily activities, Plaintiff's work history, the side effects of Plaintiff's medications, or the duration or intensity of Plaintiff's symptoms.

The Court is mindful of its obligation to defer to the ALJ's assessment of the subjective complaints. However, in light of the above-discussed problems and the importance of the analysis of subjective complaints in a case involving migraine headaches, the Court finds that the ALJ did not conduct an adequate analysis of Plaintiff's complaints of pain.

In sum, the evidence in the record appears to support Plaintiff's allegations of migraine headaches that are so severe and frequent that they would be disabling, and the ALJ's reasons for discounting that evidence do not appear to be supported by the record. The Court thus finds that substantial evidence does not support the ALJ's decision, and remand is required. On remand, the ALJ should re-evaluate the opinion evidence relevant to Plaintiff's migraine headaches and should conduct a new analysis of Plaintiff's subjective complaints of migraine headache pain that is consistent with the record and the relevant regulations. Because remand is required for re-evaluations of the evidence relevant to Plaintiff's migraine headaches, which may affect the ALJ's physical and/or mental RFC findings, the Court need not address whether the other issues raised by Plaintiff would warrant remand.

### VI.   CONCLUSION

For the reasons set forth above, the Court finds that the decision of the Commissioner is not supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **REVERSED** and that this case is **REMANDED** under 42

U.S.C. § 1383(c)(3) and Sentence Four of 42 U.S.C. § 405(g) for reconsideration and further proceedings consistent with this opinion.

                                                                                _____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 28th day of September, 2022.